**DAL–PAK, INC., Appellant,**

v.

**RALPH ROSEN ASSOCIATES, INC., Appellee.**

**No. 182.**

Court of Civil Appeals of Texas.

Tyler.

Jan. 27, 1966.

Rehearings Denied Feb. 24, 1966.

John A. Gilliam, Thompson, Knight, Simmons & Bullion, Dallas, for appellant.

Curtis White, Johnson, Guthrie, White & Stanfield, Dallas, for appellee.

DUNAGAN, Chief Justice.

The plaintiff, Walter F. Reeves, Jr., in this case in the trial court brought suit for personal injuries for himself against Dal-Pak, Inc., appellant and Ralph Rosen Associates, Inc., appellee, and recovered judgment jointly and severally against both defendants for the sum of $35,000.00. This judgment likewise provided for each defendant to have judgment over and against the other for any sum it paid on the judgment in excess of one-half of the judgment. The judgment in favor of plaintiff has been paid, and this appeal is by both defendants. Defendant Dal-Pak, Inc., is referred to as appellant and Ralph Rosen Associates, Inc., as appellee.

The facts developed on the trial are as follows:

Prior to the accident in question appellee entered into an agreement with representatives of the Hot Stream Heater Company to conduct an auction of 5000 Singleton Avenue, Dallas, Texas, the former place of business of Hot Stream Heater Company, for the purpose of liquidating and disposing of the assets of that company.

On April 3, 1962, the auction was conducted personally by Mr. Ervin Rosen. Mr. Rosen was aware of the fact that there were a number of pieces of electrical machinery in the building which would be sold and removed by working men. Assisting Mr. Rosen were two of his employees, Messrs. Leo Haas and Dick Harrell. These men were responsible for ascertaining that the purchasers obtained the proper equipment after the auction. It was part of their normal duties to disconnect the electrical current which was supplied to the machines before the machines were removed. This was done to prevent accidents such as occurred in the instant case. Mr. Rosen did not inspect the premises or the machines to make certain the current was cut off, but left this undertaking to his employees, Messrs. Haas and Harrell.

At the auction, several items were bid upon and purchased by appellant, including a drill press. The plaintiff's employer, Duro Metal Manufacturing Company, also purchased various items, including a paint conveyor.

On April 4, 1962, the day after the auction, Mr. Leo Haas went to the plant to turn off all of the electricity so that the machinery could be removed in safety. He knew that if the electricity was left "on" this would create a dangerous situation and that people could be injured. He arrived at the building around 9:00 A.M. and proceeded to make certain that all of the electricity was turned off, including the lights. He remembered people complaining about the lights being off prior to the accident.

Mr. D. K. Sanderlin, an employee of appellant, arrived at the building around 9:00 A.M. to remove the drill press which appellant had purchased. He testified that the lights were off in the building and that it was very dark at that time. In fact, some of the workmen were working by the lights of two pick-up trucks. The drill press received its electrical power through a conduit which was connected to the electrical system in the building. After testing the drill press to make certain that it was not electrically charged, Mr. Sanderlin broke the conduit from the drill press and bent the loose wires against the side of the conduit. Then he removed the drill press from the building. Mr. Sanderlin recalled there being at least one auctioneer in the building at that time.

Mr. Rosenberg, president of the Duro Metal Manufacturing Company, testified that when he entered the building there were no lights on in the building. He had some conversation with either the auctioneer or an employee of the auctioneer at that time. Mr. Rosenberg left the building prior to the accident.

Mr. Roy B. James, an employee of the Frank Hollister Company, entered the building around 9:00 or 10:00 A.M. to remove a degreaser. Mr. James had worked for the Hot Stream Heater Company previously and was familiar with the electrical system in the building. After Mr. James arrived he was approached by Mr. Tarleton, the former plant superintendent for Hot Stream, and another man who was putting tags on the equipment and telling everyone which company had bought which equipment. At the latter's request, Mr. James showed the man where to turn on the electric lights. The electric lights were subsequently ignited. Mr. James could not recall whether he or the man who was with him actually turned on the lights. They also attempted to switch off all of the electric current except that needed for the electric lights.

Mr. Louis Young, foreman for the Duro Metal Manufacturing Company, testified that he and his crew arrived at the building between 9:00 and 10:00 A.M. to remove the paint conveyor. They were informed by the auctioneer that all of the electricity had been turned off. There were no lights on in the building during the morning hours, but the lights were burning when they returned to the building after lunch at approximately 1:00 P.M. The accident occurred around 1:30 P.M. when the plaintiff was asked to move a piece of conduit. He reached under the bottom of the conduit to push it aside and was electrocuted.

Plaintiff testified that when the crew first arrived at the building that morning the electric lights were off. Mr. Young stated to him that they were having difficulty with the lights and asked a man when they would be turned on. The man, who plaintiff believes was Mr. Haas, told Mr. Young that they could proceed with their work. Mr. Leo Haas testified that although the lights came back on before the accident he did not at any time thereafter return and check the switches or the current to see if the electricity was being supplied to the machinery.

The trial was to a jury and many issues of negligence were submitted to the jury, which found Ralph Rosen Associates negligent, which was the proximate cause of the injury to the plaintiff. The jury likewise found Dal-Pak guilty of negligence, which was the proximate cause of the accident, as follows:

"SPECIAL ISSUE NO. I:

"Do you find from a preponderance of the evidence that on the occasion in question, the failure of Mr. Sanderlin to insulate the end of the electrical wiring in question was negligence as defined herein?

"Answer 'Yes' or 'No.'

"ANSWER: Yes.

"SPECIAL ISSUE NO. 1-a:

"Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause, as defined herein, of the injuries, if any, sustained by the plaintiff on the occasion in question?

"Answer 'Yes' or 'No.'

"ANSWER: Yes."

The court gave the following definitions to the jury, among others:

"'PROXIMATE CAUSE' means that cause which, in its natural and continuous sequence, unbroken by any new and independent cause, produces a result, and without which cause, such result would not have occurred, and which result, or some similar result, would have been reasonably foreseen by a person of ordinary care in the light of the attending circumstances.

There may be more than one proximate cause of a result.

" 'NEW AND INDEPENDENT CAUSE' means the act or omission of an independent agency, which breaks the causal connection between the original cause and the result complained of, and which, in itself, becomes the immediate cause of such result." Another issue submitted to the jury was No. 16:

"Do you find from a preponderance of the evidence that insofar as any act or omission of Mr. Sanderlin is concerned, the turning on of the electrical current into the electrical wires in the conduit in question after Sanderlin had completed disconnecting the drill press was not a new and independent cause, as defined herein, of whatever damages Walter F. Reeves, Jr. may have suffered?

"Answer: 'It was not a new and independent cause' or 'It was a new and independent cause.'

"ANSWER: *It was a new and independent cause.*"

When the jury returned its verdict the appellant moved the court to declare a mistrial insofar as it was concerned on the ground that Issues Nos. 1 and 1-a were in irreconcilable conflict with Issue No. 16.

The appellee moved the court to disregard the jury's answer to Issue No. 16. The court overruled both of the motions and entered judgment jointly and severally against both defendants, Dal-Pak and Ralph Rosen Associates. From this judgment both defendants appealed.

This appeal by appellant Dal-Pak presents one question and that is, Was there a direct and irreconcilable conflict in the jury findings which precluded the judgment from being entered against defendant Dal-Pak? We are of the opinion that this issue must be sustained. This identical question was passed on by the Commission of Appeals in the case of Terry v. English,

130 Tex. 632, 112 S.W.2d 446, and Judge Hickman, speaking for the court, held:

"Keeping in mind the definitions of proximate cause and new and independent cause, above set out, neither of which is challenged here as to its accuracy, the conclusion is inescapable that the findings are in conflict. By its answers to the several issues submitting proximate cause in connection with the primary negligence of the defendants in error, the jury determined that each such act of negligence unbroken by any new and independent cause produced the results complained of. It then found the existence of a new and independent cause. In so finding it found that the act of a third party over which neither party had any control either alone brought about the result complained of, or aided in bringing it about, and that, if such new and independent cause merely aided in bringing about the result, it was such a concurring cause as a person of ordinary prudence would not have reasonably foreseen. The Court of Civil Appeals correctly held that these findings of proximate cause and of the intervention of a new and independent cause cannot be reconciled. This must be true, for the jury found that a new and independent cause was both absent and present."

Appellee contends that Issue No. 16 was evidentiary and should be disregarded. We overrule this contention. This question was passed on in the case of Cox v. Ekstrom, 163 S.W.2d 845, (Tex.Civ.App.) 1942, writ refused, w. m., where Judge Murray, speaking for the court, held:

"Appellant contends, in his first point, that we should disregard the jury's finding on new and independent cause and render judgment in his favor on the verdict, as the question of new and independent cause was not a controlling issue and should not have been submitted to the jury in the first

place. Rule 279, R.C.P. It may be that the trial judge could properly have refused the issue in view of his definition of proximate cause but having submitted it, and having elicited a finding from the jury which is destructive of their finding of proximate cause, such finding cannot now be disregarded as immaterial and judgment rendered in favor of appellant."

The judgment of the trial court is reversed and the cause remanded to the trial court to determine the rights of contribution and indemnity as between appellant and appellee.